UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

VIVIAN ALICIA CRUZ BAEZ,

                                    **MEMORANDUM AND ORDER**
                                    21-cv-4195 (KAM) (RER)

                    *Plaintiff*,

        -against-

AMAZON.COM SERVICES, LLC,

                    *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

         Plaintiff Vivian Alicia Cruz Baez, proceeding *pro se*, brings the instant complaint against Defendant Amazon.com Services LLC, alleging violations of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), and the Age Discrimination in Employment Act of 1967, codified at 29 U.S.C. §§ 621–634 ("ADEA").

         Presently before the Court is Defendant's motion to dismiss the Amended Complaint (ECF No. 19) for failure to exhaust administrative remedies and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 29.)  For the reasons set forth below, Defendant's motion to dismiss is granted and the Amended Complaint is dismissed in its entirety.

1

**BACKGROUND**

The following facts, set forth in the Amended Complaint and the attached exhibits, are presumed true for purposes of considering Defendant's motion. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint).

Plaintiff, born in 1966, was a former employee of Defendant Amazon.com Services LLC ("Amazon").[1] She was terminated from her position at Amazon on March 15, 2021. Plaintiff is of Hispanic national origin, and was 54 years old at the time of her termination. (ECF No. 19 ("Am. Compl.") at 18[2]; ECF No. 30-3 ("EEOC Charge") at 7.)

On July 2, 2021, Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on national origin, retaliation, and age, in relation to termination of her employment on March 15, 2021. (EEOC Charge at 7, 9.) On July

---

[1] Defendant was sued as "Amazon Fulfillment," but Defendant states that "[n]o such entity exists, and Amazon.com Services, LLC is the appropriately named Defendant in this Action." (ECF No. 14 at 1 n.1.)

[2] All pagination pin citations refer to the page number assigned by the Court's CM/ECF system.

21, 2021, Plaintiff received a "notice of suit rights" (also referred to as a notice of right to sue) from the EEOC, which stated that she had 90 days after receipt of the notice to file a lawsuit in federal or state court based on the EEOC Charge. (*Id.*)  Plaintiff then filed her Complaint in this action on July 23, 2021.  At a pre-motion conference with this Court on November 4, 2021 regarding Defendant's anticipated motion to dismiss, this Court granted Plaintiff leave to file an amended complaint to give Plaintiff "the opportunity to add additional facts supporting her claims of discrimination and retaliation on the basis of age and national origin."  (11/04/2021 Minute Entry.)

Plaintiff filed an Amended Complaint on December 8, 2021, bringing an action for discrimination in employment pursuant to Title VII of the Civil Rights Act, codified at 42 U.S.C. §§ 2000e-2000e-17, and the Age Discrimination in Employment Act of 1967 ("ADEA"), codified at 29 U.S.C. § § 621-634.  The Amended Complaint identifies "termination of [her] employment," "retaliation," and "other acts: discrimination (age, national origin)" as the discriminatory conduct at issue. (Am. Compl. at 3-4.)  The Court will summarize the specific incidents that are relevant to Plaintiff's claims in this action, largely derived from Plaintiff's EEOC Charge and

repeated in and supplemented by allegations in her Amended
Complaint.

### *July 15, 2020*

Plaintiff alleges in her EEOC Charge that on July 15,
2020, an unknown "African American Male" employee verbally abused
her. (EEOC Charge at 7.)  In her Amended Complaint, she further
alleges that the employee was telling her "Fuck you," intimidating
her, and invading the station where Plaintiff was working as a
packer. (Am. Compl. at 9.)  Plaintiff brought the issue to the
attention of individual "Ryan," who did not know the employee's
name. (*Id.* at 27.)  Plaintiff filed a formal discrimination claim
against the employee via a written statement on August 2, 2020.
She further spoke with a Human Resources representative at the
time named "Heather." (EEOC Charge at 7.)  Plaintiff asserts that
"Heather stated that she was going to follow up with an
investigation," but that Plaintiff believes "that she did not do
anything because the guy who verbally abused [Plaintiff] was still
working there and harassing [Plaintiff]." (*Id.*)

### *December 1, 2020*

In her Amended Complaint, Plaintiff recounts an
incident from December 1, 2020, which she did not include nor
even reference in her EEOC Charge.  Plaintiff alleges that "a
group of Amazon employees" pushed her and her daughter and

4

threatened to physically attack them.  (Am. Compl. at 9, 28-29.)
The group allegedly said, "fucking bitch, fucking latin" and "I
scent [sic] you face bitch," and one of the women attacked
Plaintiff's daughter and pulled her hair.  (*Id.*)  Plaintiff
alleges that "911 was called and was told that a group was
attacking and threatening," and that she wrote a statement to a
Miss Cristina at Human Resources, who investigated the incident.
(*Id.* at 28-29.)

### *February 16, 2021; February 23, 2021*

On February 16, 2021, "the managers Clyde and Tatiana
Cruz" threatened to fire Plaintiff and her daughter "for
insubordination."  (EEOC Charge at 8.)  The managers accused both
Plaintiff and her daughter of not working the designated areas,
and said that Plaintiff "had left and had not worked at the station
that [she] was assigned to work."  (*Id.*) Plaintiff states that the
reason she was not at her designated area was because "the machines
were not working properly as [Plaintiff] had repeatedly reported."
(*Id.*)  Plaintiff believes that both she and her daughter were
terminated "because [her] daughter applied for a promotion and
since they did not want to promote her, because they knew that
[Plaintiff and her daughter] were good employees and they wanted
to bring their people."  (*Id.*)  In her Amended Complaint, Plaintiff
alleges that on February 16, 2021, an employee, Ryan Tenney,

5

"threatened" Plaintiff and her daughter that he was going to write them up, "with a high loud voice and basically humiliated [Plaintiff and her daughter] in front of other associates." (Am. Compl. at 48.) From the record before the Court, it is unclear whether Plaintiff is referring to the same February 16, 2021 incident as the incident with "the managers Clyde and Tatiana Cruz."

Plaintiff further alleges in her EEOC Charge that individual "Clyde" told Plaintiff on or before February 16, 2021 that "they only hired people who spoke English and that they only gave that position to younger employees." (EEOC Charge at 8.) In her Amended Complaint, Plaintiff describes the incident as follows:

> "Alex Clive Williams assigned at the time to the position of (Process Assistant) in the single and smartpac Dept. responded to me in a discriminatory way for asking him to reapply for an Ambassador position that it would be difficult for [Plaintiff] to be accepted because managers prefer to move up to positions . . . young people who speak perfect English."

(Am. Compl. at 10.)

Plaintiff next alleges in her EEOC Charge that on February 23, 2023, Tenney took Plaintiff to HR, where she asked for an interpreter and "was told that there was no one." Plaintiff states that Tenney and Samiul Karim from Human Resources told

6

Plaintiff she was being fired and told Plaintiff that she needed to leave the building.  Plaintiff then went to another HR office and was asked to write a statement about what happened on February 16, 2021. (EEOC Charge at 8; Am. Compl. at 11.)  Plaintiff alleges that Mike Tanelli from Human Resources was "telling [Plaintiff] to write that [she] was insubordinate and that [she] had refused to work where [she] was supposed to be working."  (EEOC Charge at 8; Am. Compl. at 11.)  Plaintiff further asserts that when she asked Mr. Tanelli if he wanted her to write a statement regarding the "intimidation" from Tenney and Karim, Mr. Tanelli told Plaintiff not to do so.  (Am. Compl. at 11.)  Plaintiff acknowledges that she was not fired that day, but alleges that "they continued with the acts of retaliation" against Plaintiff and her daughter." (EEOC Charge at 8.)

Plaintiff alleged in her EEOC Charge that she was written up on February 28, 2021 to prevent her from transferring from her location. (*Id.*)  Plaintiff was ultimately terminated on March 15, 2021.

With as liberal a reading of *pro se* Plaintiff's pleading and exhibits as possible, the Court construes the bases of Plaintiffs' national origin and age discrimination claims as the following events described in her Amended Complaint:

7

- Ever since reporting the July 15, 2020 incident to her supervisor (Ryan Tenney) and to HR, Tenney "want[ed] to humiliate [Plaintiff], be offensive," and was "basically hostile" to Plaintiff and her daughter, (*see* Am. Compl. at 48), further evinced by his threat to write Plaintiff up on February 16, 2021 and their conversation on February 23, 2021. Plaintiff states that she "feel[s] discriminated against because of [her] age and the way [she] speaks[s]," and that Tenney "has used threats, verbal intimidation on a routine basis at work." (*Id.*)

- The December 1, 2020 incident;

- Alex Clive Williams' comments to Plaintiff on February 16, 2021.

Defendant moved to dismiss the Amended Complaint and the motion was fully briefed as of March 4, 2022. The Court notes that Plaintiff did not submit a memorandum of law in opposition to Defendant's motion to dismiss, but rather submitted the following paragraph:

> The facts of my opposition are as follows are that, I was intimidated, discriminated against and verbally abused. I was affected emotionally. I also brought the complaints and incidents; and they did not take my complaints into attention. The retaliation, discrimination, intimidation, harassment and unsafety environment continued going on; even when I reported what was going on.

8

(ECF No. 31 ("Pl. Opp.") at 2.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). In considering a 12(b)(6) motion, the court may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142,

9

150 (2d Cir. 1993) (internal citations omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 1993) (clarifying that "reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of a document on a dismissal motion; mere notice of possession is not enough.") (emphasis in original).

Where, as here, the plaintiff is proceeding *pro se*, pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.' " *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at

10

555).  Although liberally interpreted, a *pro se* complaint must still state a claim to relief that is plausible on its face, as the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

**DISCUSSION**

I.  **Title VII**

A. **Threshold Issues**

i.  *Timeliness*

In New York, a federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 300 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1); *Rasko v. N.Y.C. Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018)(summary order)("Under Title VII, a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act." (first citing 42 U.S.C. 2000e-5(e)(1); and then citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999))).

Here, Plaintiff filed her EEOC Charge on July 2, 2021. (EEOC Charge at 7.)  Defendant argues that allegations in Plaintiff's Amended Complaint that arise prior to September 5, 2020 (300 days before July 2, 2021) must be "dismissed as time barred."  (ECF No. 29 ("Def. Mem.") at 13.)  The time bar would

11

apply to two incidents alleged by Plaintiff that are relevant to this motion: (1) the July 15, 2020 incident where Plaintiff alleges that an "African American Male" yelled "fuck you" to her, and (2) her allegation that on August 2, 2020, she reported the incident to Human Resources but they "did not correct it."

Although these two incidents are time-barred as the basis for Plaintiff's discrimination claims, it is well-established that "expiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (internal quotations and citation omitted); *see also Belyea v. City of Glen Cove,* 2022 WL 3586559, at *8 (E.D.N.Y. Aug. 22, 2022) (collecting cases).  Therefore, although those two incidents cannot form the direct basis of Plaintiff's claims as they arise in this action, the Court will rely on those allegations as background evidence in "evaluating the merits" of those claims. *See, e.g., Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012).

### ii. *Exhaustion of Administrative Remedies*

Defendant also argues Plaintiff's claims in the Amended Complaint must be dismissed for "failure to exhaust administrative remedies," as the Amended Complaint "contains

claims and factual assertions that were not included in the [EEOC] Charge" and have thus appeared for the first time in the Amended Complaint.  (Def. Mem. at 14.)

"Under Title VII, a complainant must 'exhaust' her administrative remedies by filing a complaint with the EEOC or an authorized state agency prior to the commencement of a Title VII action in federal court, and that complaint must name the defendant." *Belyea*, 2022 WL 3586559, at *9 (citing *Edo v. Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021)) ("Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency.") (internal citation omitted)) (collecting cases). Claims not raised in an EEOC complaint, however, "may be brought in federal court if they are reasonably related to the claim filed with the agency." *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 n.5 (2d Cir. 2018)(en banc)(alteration in original)(internal quotations and citation omitted).

"Reasonably related" claims are recognized in three situations: where (1) the alleged discriminatory conduct "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination' "; (2) the claim is one of "retaliation by an

13

employer against an employee for filing an EEOC charge"; and (3)
the plaintiff "alleges further incidents of discrimination
carried out in precisely the same manner alleged in the EEOC
charge." *See Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir.
2003); *see also Carter v. New Venture Gear, Inc.*, 310 F. App'x
454, 458 (2d Cir. 2009) (summary order) (same).  "The central
question is whether the complaint filed with the EEOC gave that
agency 'adequate notice to investigate discrimination on both
bases.' "  *Ximines v. George Wingate High Sch.*, 516 F.3d 156,
158 (2d Cir. 2008) (internal quotations and citation omitted).

        Here, Plaintiff filed a timely complaint with EEOC on
July 2, 2021.  She checked boxes for "national origin,"
"retaliation," and "age" as the bases for the alleged
discrimination.  (EEOC Charge at 2.)  She alleges that an
individual named "Clyde" told her on or about February 16, 2021
that "they only hired people who spoke English and that they
only gave that position to younger employees."  The Court
accordingly finds that, liberally construed, the additional
allegations in Plaintiff's Amended Complaint that she did not
allege in her EEOC Charge are reasonably related, as they could
fall within the "scope of the EEOC investigation which can
reasonably be expected to grow out of the charge of
discrimination," and therefore are considered exhausted for

purposes of this action.  *See, e.g., Freckleton v. Ambulnz NY LLC,* 2022 WL 4644673, at *3 (E.D.N.Y. Sept. 30, 2022).

### B. National Origin Discrimination Claim

#### i.  *Legal Standard*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To survive a motion to dismiss, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) ("The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.").  Therefore, in an employment discrimination case, a plaintiff must plausibly allege that: "(1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating

15

factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her **at least in part for a discriminatory reason,** and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.") (emphasis added).

> ii.   Application

At issue here is only the fourth *Littlejohn* element — requiring that the facts alleged provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent," in the adverse employment action Plaintiff suffered — her termination.  *See Littlejohn*, 795 F.3d at 311 ("The facts required by *Iqbal* . . . need only give plausible support to a minimal inference of discriminatory motivation.")

Although Plaintiff does not clearly allege that her termination was based on national origin discrimination, the Court liberally construes two incidents in Plaintiff's Amended Complaint to be the basis for her claim that Defendant discriminated against her due to her national origin: (1) employees attacking her and her daughter on December 1, 2020 and

16

saying "fucking bitch, fucking latin," (Am. Compl. at 9), which
Plaintiff reported to a Miss Cristina at Human Resources, who
investigated the incident. (*Id*. at 28-29); (2) Alex Clive
Williams telling Plaintiff in or about February 16, 2021 that
"it would be difficult" for her to be accepted to the Ambassador
position "because managers prefer to move up to positions . . .
young people who speak perfect English." (*Id*. at 10.) The
Court again notes that, in Plaintiff's EEOC Charge, she
described the incident as: "Clyde told me on or about before
February 16, 2021 that they only hired people who spoke English
and that they only gave that position to younger employees."
(EEOC Charge at 3.)

       The Court does not find that Plaintiff's allegations
regarding the December 1, 2020 incident lend "plausible support
to a minimal inference of discriminatory motivation" in the
adverse employment action of her ultimate termination on March
15, 2021, as required under *Littlejohn* or *Vega*. First, an
employee's " 'stray remarks' alone do not support a
discrimination suit." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50,
56 (2d Cir. 1998). In determining whether a remark is probative
of discriminatory intent, courts have "considered four factors:
(1) who made the remark (i.e., a decision-maker, a supervisor,
or a low-level co-worker); (2) when the remark was made in

17

relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).  Further, courts in the Second Circuit "routinely dismiss discrimination claims where the only allegations made in support are stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim." *Ahmad v. White Plains City Sch. Dist.*, 2019 WL 3202747, at *5 (S.D.N.Y. July 16, 2019) (collecting cases).

Here, Plaintiff has not plausibly alleged circumstances giving rise to an inference that national origin discrimination was, in part, a motivating factor in her termination.  She has not alleged, for example, that the employees who made racist remarks on December 1, 2020 "had any decision-making authority surrounding her termination," nor are there any allegations from "which the Court could infer that anyone involved in the decision to terminate Plaintiff's employment was even aware of these comments." *See Ahmad,* 2019 WL 3202747, at *5; *Dubie v. Buffalo Concrete Accessories, Inc.*, 2022 WL 17822125, at *8 (W.D.N.Y. Dec. 20, 2022) (finding that

18

even allegations that some employees who made racist remarks had supervisory or managerial roles were insufficient because Plaintiff did not allege that those employees "had the authority to hire and fire").

Plaintiff's allegations regarding a February 16, 2021 incident when Plaintiff was told that she and her daughter were not at their assigned work areas and could be terminated for insubordination, and Williams' comment that "it would be difficult" for Plaintiff to be accepted when she "asked him to reapply for an Ambassador position . . . because managers prefer to move up to positions . . . young people who speak perfect English" also fail to lend plausible support to an inference of discriminatory motivation for her termination.  (Am. Compl. at 10.)  Plaintiff alleged in her EEOC Charge that she believed that she and her daughter "were both terminated because my daughter applied for a promotion and since they did not want to promote her, because they knew that we were good employees and they wanted to bring their people."  (EEOC Charge at 8.)

Although in certain circumstances, "evidence of language discrimination may permit a jury finding of national origin or race discrimination — for example, when it is accompanied by sufficient evidence more directly proving the latter forms of discrimination," *Panjwani v. Jet Way Sec. &*

*Investigations, LLC*, 2016 WL 3675331, at *13 (E.D.N.Y. Feb. 26, 2016), *report and recommendation adopted*, 2016 WL 3702969 (E.D.N.Y. July 7, 2016), "[l]anguage, by itself, does not identify members of a suspect class." *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983).[3] Therefore, although the "English" comment could perhaps buttress Plaintiff's national origin discrimination allegations, she has not sufficiently pleaded facts to support an inference that her termination was at least partly motivated by her national origin. *See, e.g., Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (summary order) ("[B]ald assertions of discrimination ... unsupported by any comments, actions, or examples ... from which we could infer that the defendants possessed a discriminatory ... motive are ... insufficient to survive a motion to dismiss."); *see also Idlisan v. N. Shore-Lone Island Jewish Health Sys., Inc.*, 2014 WL 2157540, at *6-7 (E.D.N.Y. May 23, 2014) (dismissing discrimination claims because "[e]ven liberally read, the complaint fails to plead any facts linking

---

[3] In assessing the "propriety of a language-restriction policy," courts consider "whether the employer's practices reflect an intent to discriminate on the basis of the classifications protected by Title VII, including race and national origin ... [and] whether there is evidence that the employer, in addition to adopting an English-only policy, has exhibited other forms of racial or ethnic hostility." *Durand v. Excelsior Care Grp. LLC*, 2020 WL 7246437, at *6 n.2 (E.D.N.Y. Dec. 9, 2020) (citing *Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 612 (S.D.N.Y. 2009) (collecting cases)).

defendant's [actions] to [plaintiff's] race [or] national origin").  In any event, Plaintiff again fails to make any allegations about Williams having any decision-making authority as to her termination of employment.  *See Dubie,* 2022 WL 17822125, at *8.  As a result, the Court finds that Plaintiff has not pleaded "enough nonconclusory factual matter to nudge" her national origin discrimination claim "across the line from conceivable to plausible."  *See Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208-209 (2d Cir. 2020).

### C. Retaliation

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-3(a).  Claims of retaliation are analyzed under the *McDonnell Douglas* burden shifting analysis.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  At the pleading stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation."  *Littlejohn*, 795 F.3d at 316.  The main question on a motion to dismiss is whether a plaintiff can establish a claim that has "factual allegations that raise a right of relief above the speculative level."  *Belyea*, 2022 WL

21

3586559, at *12 (internal quotations and citation omitted) (cleaned up).

To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316. At the pleading stage, the allegations need only give plausible support to the reduced prima facie requirements. *Id*. Only the first and fourth element are in dispute here. (*See generally* Def. Mem. 23-24.)

       i. *Protected Activity*

Filing either a formal or informal complaint asserting discrimination is a protected activity for purposes of retaliation claims under Title VII. *See Jagmohan v. Long Island R.R. Co.*, 622 F. App'x 61, 63-64 (2d Cir. 2015) (summary order); *Summa v. Hofstra Univ.,* 708 F.3d 115, 126-27 (2d Cir. 2013). "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." *See Jagmohan*, 622 F. App'x at 63-64. Here, following the December 1, 2020 incident where Plaintiff alleges that a group of employees said to her and her

22

daughter "fucking bitch, fucking latin," Plaintiff wrote a
complaint to Human Resources on that date.  (Am. Compl. at 9,
27-29.)  Although Plaintiff has not explicitly asserted that she
participated in a protected activity, the Court finds that
Plaintiff has sufficiently pleaded that her Human Resources
complaint satisfies this factor, as Plaintiff had a reasonable,
good-faith basis to believe that an employee's use of derogatory
national origin language was discriminatory.[4]

    *ii.  Causal Connection*

        To sufficiently plead that a defendant-employer took
an adverse employment action "because" a plaintiff opposed an
unlawful employment practice, a plaintiff "must plausibly allege
that the retaliation was a 'but-for' cause of the employer's
adverse action."  *Vega v. Hempstead Union Free School Dist.*, 801
F.3d 72, 90 (2d Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr.
v. Nassar*, 570 U.S. 338, 360, 133 S.Ct. 2517, 186 L.Ed.2d 503
(2013)).  "But-for" causation does not require that retaliation
"was the only cause of the employer's action, but only that the

---

[4] The Court cannot conclude, however, that Plaintiff participated in a
protected activity related to Williams' comments to her on February 16, 2021
that "managers prefer to move up to positions . . . young people who speak
perfect English."  (Am. Compl. at 10.)  Even in the broadest of readings,
Plaintiff makes no allegations about whether she filed an informal or formal
complaint — or participated in any other kind of protected activity —
regarding this incident.  In fact, the Witness Statement Form that Plaintiff
submitted to Human Resources, dated February 23, 2021, makes no mention of
any such comments by Williams, even though Plaintiff asserts that the Form
was submitted for the purposes of "explaining what exactly happened" on
February 16, 2021.  (Am. Compl. at 42, 48.)

adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 497 (E.D.N.Y. 2016) (same)). A causal connection of retaliation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319.

Plaintiff has not pleaded any allegations regarding any causal connection between her protected activity (filing a complaint with Human Resources regarding the December 1, 2020 comments by an employee) and the adverse employment action (her termination on March 15, 2021). Plaintiff's allegations about the circumstances of her termination (*see* Am. Compl. at 10-11, 14-16, 48) stem almost entirely from her February 16, 2021 conversation with Tenney and subsequent workplace experiences. The December 1, 2020 incident, however, along with Plaintiff's Witness Statement Form about the incident, are never referenced again.

24

Nor does Plaintiff allege any facts indicating that her February 16, 2021 conversation with Tenney was protected activity, because she does not allege she objected to any discriminatory actions or statements in that conversation. Rather, Plaintiff alleges that "the Manager" had said that Plaintiff had left and "not worked at the station that [she] was assigned to work" (EEOC Charge at 8), and that Tenney said to her that he was "going to terminate [Plaintiff] for insubordination." (*See id*. at 10, 48.) Without any facts alleging a "but-for" causal connection between her termination, and either her December 1, 2020 complaint to Human Resources or her February 16, 2021 conversations (which, again, Plaintiff has not made any allegations suggesting those conversations may have been protected activities), Plaintiff's retaliation claim under Title VII plainly fails.

### D. Hostile Work Environment Claim

To the extent Plaintiff's Amended Complaint could be construed as alleging a hostile work environment claim under Title VII, the Court finds that Plaintiff has failed to state a claim. To state a hostile work environment claim, a plaintiff must "show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." *Belyea*, 2022 WL
3586559, at *10 (citing *Shultz v. Congregation Shearith Israel*,
867 F.3d 298, 309 (2d Cir. 2017)(internal citation omitted)).
"This standard has both objective and subjective components: the
conduct complained of must be severe or pervasive enough that a
reasonable person would find it hostile or abusive, and the
victim must subjectively perceive the work environment to be
abusive." *Littlejohn*, 795 F.3d at 321 (internal citation
omitted).  In addition, a plaintiff must show "that the
complained of conduct ... creates such an environment because of
the plaintiff's" protected characteristic.  *See Belyea*, 2022 WL
3586559, at *10 (citing *LeGrand v. Walmart Stores E., LP*, 779 F.
App'x 779, 782 (2d Cir. 2019)); *see also Tolbert v. Smith*, 790
F.3d 427, 439 (2d Cir. 2015) (citation omitted) ("[T]he
plaintiff also must show that the hostile conduct occurred
because of a protected characteristic.").

　　　　Here, Plaintiff alleges that ever since the July 15,
2020 incident, during which an employee allegedly used a
profanity against Plaintiff, Ryan Tenney "want[ed] to humiliate
[Plaintiff], be offensive," and was "basically hostile" to
Plaintiff and her daughter.  (Am. Compl. at 48.)  Plaintiff also
alleges that she felt "discriminated against because of . . .
the way [she] speak[s]," that Tenney "has used threats, verbal

26

intimidation on a routine basis at work," and that Tenney's "behavior has extended to many people on the staff." (*Id.*) In her "Witness Statement Form" dated February 23, 2021, Plaintiff also states that there were "recent events that have created a hostile atmosphere in my working environment." (*Id.* at 42.)

Plaintiff's Amended Complaint does not sufficiently plead a hostile work environment claim. Plaintiff does not allege how Tenney's purportedly hostile behavior, occurring "on a routine basis," had any relationship or connection at all to Plaintiff's protected characteristic of her national origin. Other than a brief mention that Plaintiff believes Tenney's behavior was because of the way she speaks, Plaintiff fails to make even the slightest of allegations as to how the hostile work environment "occurred under circumstances raising a reasonable inference" that her national origin "was a determining factor in the creation of the hostile work environment." *See Figueroa v. Garland*, 2022 WL 17539114, at *9 (S.D.N.Y. Dec. 9, 2022).

## II.  **ADEA Claim**

### A. Age Discrimination Claim

The ADEA prohibits an employer from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such

individual's age."  29 U.S.C. § 623(a)(1).  "[T]o defeat a
motion to dismiss . . . an AEDA plaintiff must plausibly allege
that he would not have been terminated but for his age."  *Lively
v. WAFRA Inv. Advisory Grp., Inc.,* 6 F.4th 293, 303 (2d Cir.
2021); *see also Bernstein v. N.Y. City Dept. of Educ.*, 2022 WL
1739609, at *1 (2d Cir. May 31, 2022) (summary order) (quoting
*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d
Cir. 2015)).

        Though Plaintiff alleges that her age warrants ADEA
protection, Plaintiff plainly fails to state an ADEA claim.  The
only factual allegation referring to age is Alex Clive Williams'
comment on February 16, 2021 that "it would be difficult" for
Plaintiff to be accepted to the Ambassador position "because
managers prefer to move up to positions . . . young people who
speak perfect English."  (Am. Compl. at 10.)  As stated above,
the Court notes that, in Plaintiff's EEOC Charge, she described
the incident as: "Clyde told me on or about before February 16,
2021 that they only hired people who spoke English and that they
only gave that position to younger employees."  (EEOC Charge. at
3.)  Not only did Plaintiff's only factual allegation relating
to age occur in a context completely unrelated to her ultimate
termination, but she does not allege that Williams had any role
in or was in any way involved in her termination.  (*See

28

*generally* Am. Compl. at 11-17); *see also Naumovski v. Norris*, 934 F.3d 200, 216, 216 n.47 (2d Cir. 2019) (cleaned up) (holding that "stray remarks even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination" and are insufficient to raise an inference of discriminatory motive, and noting that remarks may evince discriminatory intent where they (1) were made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate).

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the Amended Complaint is GRANTED, without leave to amend a second time.  The Court finds here that amendment would be futile because the problem with Plaintiff's liberally-construed claims is "substantive" and "better pleading will not cure it."  *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  It is evident from the record in front of the Court that Plaintiff cannot plausibly allege facts from which the Court could infer that her termination was motivated by discriminatory  or retaliatory intent.  The Clerk of Court is directed to enter judgment in favor of Defendant, to close the case, and to mail a copy of this

Memorandum and Order and the judgment to Plaintiff, and note service on the docket.

**SO ORDERED.**

DATED:      March 7, 2023
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge

30